
**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

**JESSE ANDERSON LUJAN and FRANCIS GILL,**
Plaintiffs-Appellants,

**v.**

**STEPHEN TEBO and DOES ONE (1) through TEN (10) inclusive,**
Defendants-Appellees.

Supreme Court Case No.: CVA23-009
Superior Court Case No.: CV1219-17

## OPINION

## Cite as: 2024 Guam 15

Appeal from the Superior Court of Guam
Argued and submitted on May 15, 2024
Hagåtña, Guam

Appearing for Plaintiffs-Appellants:
Curtis C. Van de veld, *Esq.*
The Vandeveld Law Office, P.C.
Gill & Perez Historic House
123 Hernan Cortez Ave.
Hagåtña, GU 96910

Appearing for Defendant-Appellee
Stephen Tebo:
G. Patrick Civille, *Esq.* (argued)
Joyce C.H. Tang, *Esq.* (briefed)
Dean A. Manglona, *Esq.* (briefed)
Civille & Tang, PLLC
330 Hernan Cortez Ave., Ste. 200
Hagåtña, GU 96910

Appearing for Defendant-Appellee
Richard Jortberg:
Daron J. Berman, *Esq.*
Berman Law Firm
111 Chalan Santo Papa, Ste. 503
Hagåtña, GU 96910

**E-Received**
12/31/2024 2:42:14 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**PER CURIAM:**

[1]     Plaintiffs-Appellants Jesse Anderson Lujan and Francis Gill ("Plaintiffs") appeal the Superior Court's dismissal of their case for failure to prosecute. They argue there was no failure to prosecute, as their revival of the case resolved any period of inactivity. In the alternative, they argue that if there was a failure to prosecute, any delay in prosecution was reasonable and excused.

[2]     The trial court's factual finding that the Plaintiffs failed to prosecute their case is supported by substantial evidence. The Superior Court did not abuse its discretion in weighing the *Santos* factors to determine whether dismissal was appropriate as a sanction for the Plaintiffs' failure to prosecute. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

[3]     This dispute arises from a real estate transaction dealing with the purchase of land in Yona from the Texas A&M University Development Foundation. Plaintiffs filed a complaint on December 1, 2017. Defendants-Appellees Stephen Tebo and Richard Jortberg answered separately. A scheduling order was filed in which discovery was to end on November 30, 2018, with a trial set for February 18, 2019.

[4]     In the following months, the parties submitted initial disclosures, and Tebo sent discovery requests, which he claims were never answered. Appellee's Br. at 3-4 (Feb. 6, 2024).[1] In late 2018, the parties began disputing whether Tebo, a resident of Colorado, had to appear in Guam for a deposition. In March 2019, the Superior Court decided that a deposition in Guam would be

---

[1] We note that separate counsel represents Appellees Tebo and Jortberg. As Jortberg did not file a brief, our discussion of the facts focuses on the contentions relevant to Tebo. *Cf.* Jortberg's Joinder in Tebo's Appellee's Br. (Feb. 6, 2024).

exceedingly burdensome to Tebo and allowed for deposition by videoconference. Tebo claims that the Plaintiffs did not take any steps to depose him. *Id.* at 32.

[5]     From August 1, 2019, to November 5, 2020, the Superior Court scheduled thirteen status conferences to move the case along. Plaintiffs' counsel did not appear at six of the conferences. During this time, Plaintiffs presented a new scheduling order, signed by co-defendant Jortberg. Tebo did not sign the scheduling order until nearly five months had passed. The new discovery plan and scheduling order, agreed upon by the parties, provided a September 28, 2020, discovery cutoff date. This date also passed, and on November 18, 2020, Tebo moved to dismiss for failure to prosecute. Jortberg joined the motion a few days later.

[6]     On February 16, 2021, the Superior Court denied the motion to dismiss. Relying on this court's decision in *Santos v. Carney*, the trial court stated that "[w]hen presented with a motion to dismiss for failure to prosecute," it was required to consider five factors: "1) the public's interest in expeditious resolution of litigation; 2) the Court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring the disposition of cases on their merits and 5) the availability of less drastic sanctions." Record on Appeal ("RA"), tab 67 at 2-3 (Dec. & Order re: Mot. Dismiss, Feb. 16, 2021) (citing *Santos v. Carney*, 1997 Guam 4 ¶ 5). The trial court found the first two *Santos* factors—the public's interest in expeditious resolution of litigation and the court's need to manage its docket—weighed against dismissal. *Id.* at 3-4. It noted that although Plaintiffs and their counsel did not appear at six of the thirteen status hearings scheduled since March 2019, a discovery dispute was litigated in early 2019, and Plaintiffs' proposed scheduling order in February 2020 represented "an attempt, however untimely and halfhearted[,] to forward the case." *Id.* at 4. It further found that "[a]ny subsequent delay is reasonable, due to the morbidity conditions of the Plaintiffs and their inability to travel due to the ongoing COVID-19 pandemic."

*Id.* The court found the third factor, risk of prejudice to defendants, to weigh against dismissal, as Tebo and Jortberg did not put forth any evidence about actual prejudice. *Id.* at 5. It found the fourth factor to also weigh against dismissal—as the public policy favoring disposition of cases on their merits generally does—especially given the ongoing pandemic. *Id.* After considering the availability of less drastic sanctions, the court stated it would set the case for trial, warning that "no further delays on the part of the Plaintiff[s] will be tolerated, and Plaintiff[s] [are] warned that any further dilatory behavior will result in a dismissal." *Id.* at 5-6.

[7]     The court set a scheduling conference for three months out. The judge assigned to the case, Judge Sukola, retired on March 26, 2021.[2] After several assignments and recusals, the case was eventually assigned to Judge Barcinas on February 18, 2022.

[8]     After the motion to dismiss was denied in February 2021, no action was taken by the Plaintiffs until June 2022, when they filed (1) a motion to compel discovery and (2) a declaration regarding Francis Gill's upcoming visits to Guam.[3] The motion to compel discovery argued that Tebo intentionally withheld certain emails in defiance of Guam Rule of Civil Procedure ("GRCP") 26(b)(1). Tebo opposed the motion and filed a second motion to dismiss for failure to prosecute (later joined by Jortberg), which Plaintiffs subsequently opposed. In August 2022, the Superior Court heard arguments on the Plaintiffs' motion to compel and took it under advisement.

[9]     Meanwhile, on September 7, 2022, Plaintiffs filed another motion to enlarge time to conduct discovery, which Tebo and Jortberg opposed. The Superior Court did not rule on this

---

[2] Per the Plaintiffs' request, we take judicial notice of Judge Sukola's retirement date. *See* Appellants' Br. at 8 n.1 (Sept. 11, 2023).

[3] For a portion of time during the pandemic, Francis Gill resided on a remote island in the Philippines. Appellant's Br. at 4. He returned to Guam in June 2022. *Id.* at 7. Plaintiffs' counsel has maintained that contacting Gill was difficult during this time. *See id.* at 6-7.

motion and, instead, on November 1, 2022, denied Plaintiffs' motion to compel and ordered the parties to "(1) reengage in discovery, and (2) submit a discovery plan and scheduling order." RA, tab 114 at 1 (Dec. & Order re: Mot. Compel, Nov. 1, 2022). It found that the parties had not held a meaningful meet and confer back in 2018, as "Plaintiffs' counsel ended the only meeting the parties engaged in before the conversation even reached the discovery disputes." *Id.* at 8. The Superior Court did not mention Tebo and Jortberg's second motion to dismiss in this decision and order.

[10]     On February 9, 2023, the Superior Court held a hearing on Tebo and Jortberg's second motion to dismiss for failure to prosecute. Much of the defendants' arguments were based on their allegations that the Plaintiffs failed to reengage in discovery. *See* RA, tab 117 at 2 (Min. Entry, Feb. 9, 2023); RA, tab 119 at 1 (Resp. to Pls.' Submission Disagreement of Proposed Scheduling Order Forms, Feb. 13, 2023) ("Mr. Tebo has attempted to meet [and] confer in good faith."). Plaintiffs' counsel claimed that the impasse was attributable to the obstinance of Tebo's counsel. *See* RA, tab 117 at 2 (Min. Entry). He also claimed to have conferred with Jortberg's counsel and to have resolved some things. *Id.*

[11]     After the hearing, the Plaintiffs submitted a draft proposed scheduling order and discovery plan and informed the court of the parties' point of disagreement for the court's resolution. Tebo opposed the submission, arguing the proposals were moot given the motion to dismiss that was under advisement. Tebo also reiterated that "[t]he Court has been fully apprised of the difficulties attendant to the meet and confer sessions between the parties" and requested that the motion to dismiss be ruled on before addressing any potential scheduling order or discovery plan. RA, tab 119 at 1 (Resp. to Pls.' Submission Disagreement of Proposed Scheduling Order Forms).

**[12]**     On May 16, 2023, the Superior Court granted the motion to dismiss for failure to prosecute. In weighing the first two *Santos* factors, the court determined that:

> The case has now been on the docket for more than five years, numerous safety measures have been put in place, and Plaintiffs still have made little to no progress in moving this case forward.  The Court no longer finds the pandemic an acceptable shield for Plaintiffs to cower behind, and while the Court is sympathetic to [Plaintiffs' counsel's] health issues, Plaintiffs have had ample opportunities to seek additional or alternative counsel to help move this case forward.

RA, tab 120 at 4 (Dec. & Order re: Second Mot. Dismiss, May 16, 2023).  For the third factor, the court found that the risk of prejudice weighed in favor of dismissal, as "[t]he Guam Supreme Court holds that once a delay is determined to be unreasonable, as this delay has been, prejudice is presumed." *Id.* at 5 (citing *Sun Young Choi Park v. Kawashima*, 2010 Guam 10 ¶ 21).  For the fourth factor, although it ordinarily weighs against dismissal, the Superior Court determined that disposition on the merits did not justify "the delay and prejudice caused by Plaintiffs' actions." *Id.* Finally, it found the availability of less drastic sanctions to weigh in favor of dismissal, as the Plaintiffs failed to heed Judge Sukola's warning from the order denying the first motion to dismiss. *Id.* at 5-6.  This appeal timely followed.

## II.  JURISDICTION

**[13]**     We have jurisdiction over appeals from final judgments and orders of the Superior Court. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 118-157 (2024)); 7 GCA §§ 3107, 3108(a) (2005).  A dismissal for failure to prosecute "operates as an adjudication upon the merits."  Guam R. Civ. P. 41(b).

## III.  STANDARD OF REVIEW

**[14]**     "Dismissal for failure to prosecute under Guam Rule of Civil Procedure 41(b) is reviewed for abuse of discretion." *Kittel v. Guam Mem'l Hosp. Auth.*, 2020 Guam 3 ¶ 11.  We review the

trial court's findings of fact for clear error. *Wilson v. Wilson*, 2023 Guam 17 ¶ 26; *see also United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 247 (9th Cir. 1995); *Smith v. Gold Dust Casino*, 526 F.3d 402, 404-05 (8th Cir. 2008) (reviewing factual finding of failure to prosecute for clear error while reviewing decision to dismiss as sanction for failure to prosecute for abuse of discretion). We will reverse only if we have "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors." *Santos*, 1997 Guam 4 ¶ 4 (quoting *In re Eisen*, 31 F.3d 1447, 1451 (9th Cir. 1994)).

## IV.  ANALYSIS

### A.  The Superior Court Did Not Commit Clear Error When It Found Plaintiffs Failed to Prosecute Their Case

[15]     Plaintiffs argue that "[t]here was no failure to prosecute the action" and that "Rule 41(b) presupposes a failure to prosecute before it can be invoked." Appellants' Br. at 9 (Sept. 11, 2023). They claim there was no failure to prosecute because they revived the case in June 2022, when Plaintiff Gill returned to Guam and the case started to be "litigated aggressively." *Id.* at 9-10. Plaintiffs claim there are "overwhelming facts supporting revival of the suit." Appellants' Reply Br. at 1 (Feb. 20, 2024). We agree that a trial court must first make the factual determination that there has been a failure to prosecute before imposing the sanction of dismissal. *See Guam Hous. & Urb. Renewal Auth. v. Dongbu Ins. Co.*, 2002 Guam 3 ¶ 15 ("[A] court's finding of a failure to prosecute does not mandate dismissal under GRCP 41(b)."). However, the Plaintiffs ignore that "[t]he applicable standard of appellate review is narrow; the test is whether the lower court rationally could have found as it did, rather than whether the reviewing court would have ruled differently." *M Elec. Corp. v. Phil-Gets (Guam) Int'l Trading Corp.*, 2020 Guam 23 ¶ 14 (quoting *JWS Refrigeration & Air Conditioning, Ltd. v. Cain*, 2013 Guam 19 ¶ 26 n.6). Under the clear error standard, Plaintiffs give us no reason to question the trial court's factual findings.

### 1. The Plaintiffs' claim that there was no failure to prosecute the action is subject to clear error review

[16] Rule 41(b) provides that a defendant may move for dismissal of an action for failure "to prosecute or to comply with these rules or any order of court." Guam R. Civ. P. 41(b). The rules do not define what constitutes a failure to prosecute, *Guam Econ. Dev. Auth. v. Affordable Home Builders, Inc.*, 2013 Guam 12 ¶ 11, and "[t]his court has not expressly defined the action (or inaction) amounting to a failure to prosecute under Rule 41(b)," *Quitugua v. Flores*, 2004 Guam 19 ¶ 16 (per curiam). Instead, we have stated, "[T]here is no bright-line rule or specified time period that automatically constitutes a failure to prosecute." *Lujan v. McCreadie*, 2014 Guam 19 ¶ 8. We agree with the reasoning of the former District Court of Guam Appellate Division that "[t]he trial court must consider all of the pertinent circumstances in exercising its discretion, and what constitutes 'failure to prosecute' depends on the facts of the particular case." *Bank of Guam v. Nelson*, DCA No. 84-0058A, 1985 WL 56591, at *1 (D. Guam App. Div. June 28, 1985); *see also Lujan v. Lujan*, 2002 Guam 11 ¶ 26. Resolving a motion to dismiss for failure to prosecute requires a trial court to make factual determinations, *see Kittel*, 2020 Guam 3 ¶ 26, and we conclude that whether the action (or inaction) of a plaintiff constitutes a failure to prosecute is an issue of fact for the trial court to decide case by case, *see McCreadie*, 2014 Guam 19 ¶ 8; *Lujan*, 2002 Guam 11 ¶ 26 ("Motions to dismiss for failure to prosecute, even if filed after litigation has been reactivated, should be tried on a case-by-case basis.").

[17] Like any other factual finding, the Superior Court's determination that Plaintiffs failed to prosecute their case is reviewed for clear error. *See Smith*, 526 F.3d at 404-05; *cf. Santos*, 1997 Guam 4 ¶ 4 ("A review of the facts and the factors weigh in favor of dismissal, and the record is sufficient to support affirmance."). A factual finding is "clearly erroneous" when the reviewing court is "left with the definite and firm conviction that a mistake has been committed" after

reviewing all the evidence. *M Elec. Corp.*, 2020 Guam 23 ¶ 13 (quoting *Chung v. Blair Constr. Co.*, 2019 Guam 28 ¶ 13). "[U]nder the clear error standard of review, we only look at whether the trial court's finding of fact is supported by substantial evidence." *Id.* (alteration in original) (quoting *Fargo Pac., Inc. v. Korando Corp.*, 2006 Guam 22 ¶ 30). "The standard of review for findings of fact . . . is very deferential to the determinations of the trial court." *Id.* ¶ 14 (quoting *Craftworld Interiors, Inc. v. King Enters., Inc.*, 2000 Guam 17 ¶ 13). "As an appellate court, we must defer to the trial court's resolution of disputed factual matters where there is evidence to support its findings." *Id.* ¶ 15.

### 2. The trial court's finding that Plaintiffs failed to reactivate the litigation is not clearly erroneous

[18]    On appeal, Plaintiffs do not dispute that there was a period of inactivity of at least sixteen months between the time Judge Sukola denied the initial motion to dismiss for failure to prosecute and when they moved to compel discovery. *See* Reply Br. at 5 ("[Plaintiffs] persistently litigated the case from June 21, 2022 when they filed their Motion to Compel."). Instead, they argue that they "showed diligence in prosecution after any period of inactivity and therefore the Dismissal warrants reversal." Appellants' Br. at 11.

[19]    Generally, "active prosecution after inactivity will cure a failure to prosecute." *Lujan*, 2002 Guam 11 ¶ 19. In *Lujan v. Lujan*, we held that "[m]otions to dismiss for failure to prosecute, even if filed after litigation has been reactivated, should be tried on a case-by-case basis. If diligence is shown after the inactivity has stopped, dismissal is inappropriate." 2002 Guam 11 ¶ 26. "The fact that a lengthy amount of time has passed from the filing of the complaint until the motion to dismiss does not warrant dismissal when the plaintiff has pursued her case diligently throughout." *Affordable Home Builders*, 2013 Guam 12 ¶ 19. But "isolated incidents of prosecutorial activity" alone are not "indicative of any prosecutorial zeal" sufficient to show active prosecution. *See*

*Santos*, 1997 Guam 4 ¶ 7. When a plaintiff has taken "no more than a few inconsequential steps" over an extended period towards resolution of the case, "it cannot be said with definite and firm conviction that" the trial court committed a "clear error of judgment" in concluding there was a failure to prosecute. *Bank of Guam*, 1985 WL 56591, at *2. Generally, "the relevant time period" for a court to consider if the plaintiff has failed to adequately prosecute their case "is from the inception of the case until the filing of the motion to dismiss." *McCreadie*, 2014 Guam 19 ¶ 12. The court should consider "the substantive virtues of the motion to dismiss based on the facts and circumstances at the time the motion was made." *Id.* ¶ 11. But in certain circumstances, it is within a court's discretion to consider a plaintiff's actions after a motion to dismiss is filed, "such as when the trial court specifically defers consideration of the motion to dismiss for a period of time to permit a plaintiff to prosecute his case." *Id.* ¶ 11 n.1.

[20]    The Superior Court found that "[t]he case has now been on the docket for more than five years, numerous safety measures have been put in place, and Plaintiffs still have made little to no progress in moving this case forward." RA, tab 120 at 4 (Dec. & Order re: Second Mot. Dismiss). The trial court concluded that Plaintiffs' behavior met the criteria of a "passive plaintiff who has failed in his obligation to prosecute the defendants with the vigor expected of a plaintiff," *id.* at 5 (quoting *Santos*, 1997 Guam 4 ¶ 9), and that a failure to prosecute was evinced by their "inactivity and dilatoriness in moving the case forward," *id.* (quoting *Kawashima*, 2010 Guam 10 ¶ 23).

[21]    Plaintiffs make much of their motion to compel, arguing that once it was filed, the "case was now being litigated aggressively." Appellants' Br. at 10. But the record before the trial court showed that when the second motion to dismiss was made, the only action the Plaintiffs took in nearly a year and a half was to file a single motion to compel without first attempting to meet and confer with opposing counsel. *See* Certified Docket Sheet at 3 (July 17, 2023). We cannot say

the trial court clearly erred when it found that a single procedurally improper motion to compel failed to reactivate the litigation.[4]  It was not clearly erroneous for the trial court to find that an improperly filed motion to compel did not amount to the Plaintiffs diligently litigating their claims after sixteen months of inactivity.  *See Lujan*, 2002 Guam 11 ¶ 26; *Affordable Home Builders*, 2013 Guam 12 ¶ 19.  We cannot say it was clear error for the trial court to find Plaintiffs' actions constituted a failure to prosecute because such "isolated incidents of prosecutorial activity" were no more than a "few inconsequential steps" toward resolving the case.  *See Santos*, 1997 Guam 4 ¶ 7; *Bank of Guam*, 1985 WL 56591, at *2.

[22]    Plaintiffs argue this case is one of the potential scenarios contemplated in *Lujan v. McCreadie* where the trial court should consider actions that occurred after the motion to dismiss was filed.  Appellants' Br. at 13 (citing *McCreadie*, 2014 Guam 19 ¶ 11 n.1).  They argue that the trial court deferred consideration of the motion to dismiss to permit them to prosecute their case and that they complied with the court's order to reengage in discovery and submit a discovery plan.  *Id.* at 13-14.  Plaintiffs claim that dismissal after their compliance with the trial court's order "is an unambiguous miscarriage of justice."  *Id.* at 13-14.  After reviewing the entire record, we are not "left with the definite and firm conviction that a mistake has been committed."  *See M Elec. Corp.*, 2020 Guam 23 ¶ 13.

[23]    The trial court's decision does not explicitly state whether it considered the Plaintiffs' actions after the motion to dismiss was filed when it found a failure to prosecute.  But it was within the trial court's discretion to defer consideration of the motion to dismiss for a period of time to permit Plaintiffs to prosecute their case.  *See McCreadie*, 2014 Guam 19 ¶ 11 n.1.  And the record

---

[4] The Superior Court determined that the motion was filed in violation of GRCP 37(a)(2)(A).  RA, tab 114 at 6-8 (Dec. & Order re: Mot. Compel, Nov. 1, 2022).  Significantly, the trial court found that Plaintiffs had failed to engage in a single "fulsome and meaningful discussion" regarding discovery in over four years.  *Id.* at 9.

reflects that the trial court ordered the parties to reengage in discovery after the second motion to dismiss was filed on July 19, 2022. *See* RA, tab 114 at 1-9 (Dec. & Order re: Mot. Compel). At the hearing on the motion to dismiss, the trial court was presented with conflicting stories: defense counsel represented that the attempt to reengage in discovery had failed, while Plaintiffs claimed they had complied with the court's order and were now prosecuting the case. *See* RA, tab 119 at 1 (Resp. to Pls.' Submission Disagreement of Proposed Scheduling Order Forms); RA, tab 117 at 2 (Min. Entry). That the trial court granted the motion to dismiss leads us to conclude it resolved any factual dispute about compliance with its orders against Plaintiffs.[5] Because there is substantial evidence to support the trial court's findings, we must defer to its resolution of the disputed factual matters. *See M Elec. Corp.*, 2020 Guam 23 ¶ 15.

[24]     Two years passed between Judge Sukola's warning that no further delays would be tolerated and the hearing on the second motion to dismiss. After sixteen months of inactivity, Plaintiffs moved to compel without attempting to meet and confer. Although Tebo moved for involuntary dismissal for failure to prosecute, the court deferred deciding the motion. The trial court found that since the case had been filed in 2017, the parties had never had a meaningful meet and confer. Rather than dismissing the case, it ordered the parties to reengage in discovery, including holding a fulsome meet and confer for the first time. When the parties came before the court for the hearing on the motion to dismiss, other than their opposition to the motion to dismiss, the only additional document the Plaintiffs had filed was a motion to enlarge discovery time.[6] At the hearing, counsels for the defendants made representations to the court that the parties had yet again failed to meet and confer. After reviewing the entire record—including the actions taken by

---

[5] Although Guam Rule of Civil Procedure 41(b) provides that failure to comply with a court order is an additional basis for involuntary dismissal, it was not raised by the trial court or the parties.

[6] The Plaintiffs filed a proposed scheduling order and discovery plan after the hearing, which Tebo opposed for being moot since the motion to dismiss was already under advisement.

Plaintiffs after the motion to dismiss was filed—we are not left with the definite and firm conviction that a mistake was committed by the trial court when it found Plaintiffs' inaction constituted a failure to prosecute.

[25]     Whether viewed on the day the motion was filed or considering Plaintiffs' subsequent actions, there is substantial evidence in the record to support the trial court's finding that the Plaintiffs' inaction amounted to a failure to prosecute under GRCP 41(b).  The trial court's factual findings were not clearly erroneous.

## B.  The Superior Court Did Not Abuse Its Discretion in Determining that the *Santos* Factors Weighed in Favor of Dismissal

[26]     "[A] court's finding of a failure to prosecute does not mandate dismissal under GRCP 41(b).  Rule 41(b) empowers the court to dismiss an action on a plaintiff's failure to prosecute; it remains within the court's discretion whether to exercise that power."  *Lujan*, 2002 Guam 11 ¶ 13 (quoting *Dongbu Ins.*, 2002 Guam 3 ¶ 15).  In *Santos*, we adopted the Ninth Circuit's five-factor test to determine if dismissal is a proper sanction for failure to prosecute.  1997 Guam 4 ¶ 5.  Those five factors are: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions."  *Id.* (quoting *In re Eisen*, 31 F.3d at 1451).  "Dismissal of an action is a serious sanction which should be used in a non-abusive manner."  *Ward v. Reyes*, 1998 Guam 1 ¶ 17; *Quitugua*, 2004 Guam 19 ¶ 21 ("[D]ismissal is a harsh penalty and is to be imposed only in extreme circumstances." (quoting *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986))).  "Dismissal is appropriate if at least four factors favor dismissal or three factors 'strongly' support dismissal."  *Kawashima*, 2010 Guam 10 ¶ 10.

**[27]**     "When the trial court makes specific findings as to each factor, we must give due deference to the trial court for matters lying within its discretion . . . ." *Affordable Home Builders*, 2013 Guam 12 ¶ 16.  As the trial court made specific findings as to each factor, we review the trial court's application of the *Santos* factors for an abuse of discretion—being sure to give "due deference to the trial court." *See id.*; *McCreadie*, 2014 Guam 19 ¶ 7; *Kawashima*, 2010 Guam 10 ¶ 11.  Because the first two factors may be analyzed together, *see Kawashima*, 2010 Guam 10 ¶ 13, we proceed in four parts.

> 1. **The public's interest in expeditious resolution of litigation and the court's need to manage its docket**

**[28]**     When evaluating the first *Santos* factor, a court is "tasked with calculating the cumulative length of delay attributable to the plaintiff and examining whether the plaintiff failed to pursue the case diligently and did so for reasons that do not amount to good cause." *Affordable Home Builders*, 2013 Guam 12 ¶ 18.  Similarly, the second *Santos* factor asks the trial court "to determine what period of delay can be endured before its docket becomes unmanageable." *Id.* ¶ 30.  These factors are often considered together because they both deal with concerns of judicial economy, *id.* ¶ 29, and focus on whether the plaintiff acted reasonably, *United Pac. Islanders' Corp. v. Cyfred, Ltd.*, 2017 Guam 6 ¶ 27.  A court's assessment of these factors can essentially be boiled down to a single inquiry: whether the "plaintiff 'failed in [its] obligation to reasonably move the case forward, taking into consideration the length and reasons for the delay.'" *See id.* (alteration in original) (quoting *McCreadie*, 2014 Guam 19 ¶ 8).  Delay is not reviewed "in a vacuum"; only unreasonable delay will support dismissal for lack of prosecution.  *Affordable Home Builders*, 2013 Guam 12 ¶ 13.  The plaintiff bears the burden of showing that any delay was reasonable. *Ward*, 1998 Guam 1 ¶ 18.  "In assessing unreasonable delay, the relevant time period 'is from the inception of the case until the filing of the motion to dismiss.'" *United Pac. Islanders' Corp.*,

2017 Guam 6 ¶ 27 (quoting *McCreadie*, 2014 Guam 19 ¶ 12); *see also Affordable Home Builders*, 2013 Guam 12 ¶ 15 ("[I]n assessing dilatoriness, courts should consider a party's conduct over the course of the entire case."). We have held that "[t]he trial court is in the best position to decide when delay in a particular case interferes with the public interest and docket management, and we give deference to its determination of the reasonableness of the delay." *Kawashima*, 2010 Guam 10 ¶ 19 (citing *Santos*, 1997 Guam 4 ¶ 5).

[29] The Superior Court concluded the first two factors "strongly weigh in favor of Defendants," finding:

> The case has now been on the docket for more than five years, numerous safety measures have been put in place, and Plaintiffs still have made little to no progress in moving this case forward. The Court no longer finds the pandemic an acceptable shield for Plaintiffs to cower behind, and while the Court is sympathetic to [Plaintiffs' counsel's] health issues, Plaintiffs have had ample opportunities to seek additional or alternative counsel to help move this case forward.

RA, tab 120 at 4 (Dec. & Order re: Second Mot. Dismiss). Tebo filed his second motion to dismiss on July 19, 2022. At that point—five years since the case's inception—little had been done to move it along. As Tebo and Jortberg correctly point out, the burden was on the Plaintiffs, who "had not taken a single deposition [and] had not responded to Tebo's discovery requests." *See* Appellee's Br. at 15. The trial court had given Plaintiffs a specific and express warning in 2021 that they must move the case toward resolution and that no further delays would be tolerated. This is not a case where "the trial's initial stages proceeded normally," and "there was clear activity in the case," up until a certain point. *See United Pac. Islanders' Corp.*, 2017 Guam 6 ¶ 28. Instead, the trial court found that the case had been marked by Plaintiffs' "untimely and halfhearted" attempts to move the case forward. *See* RA, tab 120 at 2 (Dec. & Order re: Second Mot. Dismiss) (quoting RA, tab 67 at 1 (Dec. & Order re: Mot. Dismiss)). The trial court did not abuse its discretion in concluding the first two factors weighed strongly in favor of dismissal.

**[30]**    Plaintiffs argue that the trial court should have made specific findings on the effects of the pandemic. Appellants' Br. at 15-16, 18 ("[T]he Trial Court made no analysis as to exactly when it concluded that the pandemic was sufficiently abated so that Francis could have taken the risk of traveling to Guam, thereby establishing a date by which any future delay was unreasonable."). Plaintiffs cite no cases supporting this notion. Our case law does not suggest that the Superior Court must make specific findings on an issue of timing when assessing the reasonableness of delay; we have affirmed dismissals where the Superior Court has made no findings at all. *See Ward*, 1998 Guam 1 ¶¶ 19-26. The Superior Court determined that the pandemic was no longer a reasonable excuse for delay since over five years had passed with little progress on the case. We defer to this assessment.

**[31]**    Plaintiffs also argue that Judge Sukola excused any further delay attributable to the pandemic in her order denying the first motion to dismiss. Appellants' Br. at 16. Plaintiffs specifically highlight the line "[a]ny subsequent delay is reasonable, due to the morbidity conditions of the Plaintiffs and their inability to travel due to the ongoing COVID-19 pandemic." *Id.* (quoting RA, tab 67 at 4 (Dec. & Order re: Mot. Dismiss)). But read in context, Judge Sukola did not say that *any* future delay on behalf of the Plaintiffs that could be attributed to the pandemic would be excused. Instead, a plain reading of the order shows she stated that any previous delay until that point—between the start of the pandemic and the court's decision—was excused. The Superior Court explicitly stated that after that point, Plaintiffs could no longer rely on the pandemic as an excuse for delay. *See* RA, tab 67 at 6 (Dec. & Order re: Mot. Dismiss) ("[N]o further delays on the part of the Plaintiff[s] will be tolerated, and Plaintiff[s] [are] warned that any further dilatory behavior will result in a dismissal."). The Superior Court did not abuse its discretion when it considered the Plaintiffs' conduct throughout the entire case, including conduct that had been

excused previously but had been warned should not continue.  *See Affordable Home Builders*, 2013 Guam 12 ¶ 15 ("[I]n assessing dilatoriness, courts should consider a party's conduct over the course of the entire case.").  For instance, in *Quitugua*, we affirmed dismissal on a second motion to dismiss for failure to prosecute—despite the fact the trial court initially excused the delay due to "unusual circumstances"—because the trial court provided a "specific and express warning" that further delays would not be tolerated.  2004 Guam 19 ¶¶ 7, 22.

[32]     Plaintiffs also attribute the delay to the illness of counsel.  Appellants' Br. at 20-21.[7]  The Superior Court found that "while the Court is sympathetic to [Plaintiffs' counsel's] health issues, Plaintiffs have had ample opportunities to seek additional or alternative counsel to help move this case forward."  RA, tab 120 at 4 (Dec. & Order re: Second Mot. Dismiss).  We are also sympathetic to counsel's serious health issues and recognize that illness of an attorney may constitute a reasonable excuse for delay.  But under the abuse-of-discretion standard, we cannot substitute our judgment for that of the trial court.  *People v. Quintanilla*, 2001 Guam 12 ¶ 9.  The question before us is "whether the trial court's decision was allowable."  *People v. Bosi*, 2022 Guam 15 ¶ 66.  Given the deference we are to accord the trial court for its determination of the reasonableness of delay, *Kawashima*, 2010 Guam 10 ¶ 19, we cannot say the trial court abused its discretion when it concluded that counsel's ill health did not excuse the delay in this case, *see, e.g.*, *Borgia v. Interboro Gen. Hosp.*, 455 N.Y.S.2d 97, 98 (App. Div. 1982) ("Under the circumstances we do not accept the poor health of plaintiffs' attorney as a satisfactory excuse for plaintiffs' failure to

---

[7] Several different dates have been proffered as to when Plaintiffs' counsel's health issues began and when they began impacting his work.  *Compare* Appellants' Br. at 20 (stating health issues began seriously impacting his work in March 2022), *with* RA, tab 101 at 6 (Opp'n Second Mot. Dismiss, Aug. 23, 2022) (stating health issues began seriously impacting his work in March 2021), RA, tab 120 at 3 (Dec. & Order re: Second Mot. Dismiss, May 16, 2023) (stating health issues began in 2019 but did not seriously impact his work until March 2021), *and* Digital Recording at 10:32:05-10:32:48, 11:01:15-11:01:57  (Oral Arg., May 15, 2024) (stating health issues impacted his work when he needed surgery in May 2022 and March 2023, but later stating that his health issues began impacting his work in March 2021).

serve a timely complaint. . . . [I]t would have behooved a reasonable and diligent attorney in these circumstances either to have obtained legal assistance sooner or else removed himself from the case."), *aff'd*, 451 N.E.2d 483 (N.Y. 1983).

[33]    Finally, Plaintiffs argue that any delay was reasonable because of the lack of an appointed judge to preside over the case following Judge Sukola's retirement. Appellants' Br. at 18-20. A litany of judges were appointed and recused from April 2021 to February 2022. As the Plaintiffs point out, "The first judicial replacement for Judge Sukola was not appointed until December 2022, over eight months after her retirement." Appellants' Br. at 18. Although Plaintiffs argued in their opposition to the second motion to dismiss that "Plaintiffs have awaited a judicial assignment which would hold," RA, tab 101 at 10 (Opp'n Second Mot. Dismiss, Aug. 23, 2022), the Superior Court did not address this issue in its order dismissing the case.

[34]    We have repeatedly "recognize[d] the detrimental effects that lengthy delays attributable to the trial court, or 'judicial delays,' have on civil litigants." *United Pac. Islanders' Corp.*, 2017 Guam 6 ¶ 26. And we have held that "[c]onsideration of judicial delay is an appropriate part of a Rule 41(b) analysis, particularly when considering the public's interest in expeditious litigation [and] the court's need to manage its docket." *Id.* In both *McCreadie* and *United Pac. Islanders' Corp.*, we found that the first two *Santos* factors weighed against dismissal because fully briefed dispositive motions were still pending when the trial court granted dismissal. *See United Pac. Islanders' Corp.*, 2017 Guam 6 ¶ 29 ("[T]he record reveals that more than 24 months had passed before the trial court took any action in the case, even though a dispositive motion was pending before it in the form of a fully-briefed motion for summary judgment. . . . In light of the record before us, we find the trial court to have greatly contributed to the delay in the instant case."); *McCreadie*, 2014 Guam 19 ¶¶ 16, 23 ("[T]he trial court had an opportunity to dispose of this case

on its merits in the same time period it took to rule on the motion to dismiss. The motion for summary judgment was filed five months before the motion to dismiss . . . ."). However, we have held that judicial delay was not a valid excuse for lack of prosecution under the circumstances of other cases. *See Ward*, 1998 Guam 1 ¶ 23; *Guam Dep't of Educ. v. Guam Civ. Serv. Comm'n* (*Somerfleck*), 2017 Guam 8 ¶ 13 (rejecting "out of hand" a petitioner's suggestion "that it was the court's responsibility to schedule a hearing without them"). In *Ward*, this court rejected a party's attempt to blame the trial court for the delay. 1998 Guam 1 ¶ 23. We emphasized that it is ultimately a plaintiff's duty to prosecute her case:

> Ward's counsel blamed the delay on the court, yet Ward fails to realize that as the Plaintiff in the action, Ward herself had a duty to prosecute the matter. Apart from the tardily presented Motion for Further Proceedings, Ward took no action herself to expedite resolution of the case. The one year delay was not justified by the Appellant. All discovery had been completed, the matter had been fully prepared for trial, yet no action was taken to set the matter for a new trial.

*Id.* ¶ 24 (footnote omitted).

[35]     The argument that the Plaintiffs could not move the case forward because "there was a lack of a Court and ability to schedule this matter" lacks merit. *See* RA, tab 101 at 14 (Opp'n Second Mot. Dismiss); Appellants' Br. at 18-20. The Plaintiffs are correct that the discovery plans the parties submitted in 2018 and 2020 eventually lapsed and, in November 2022, the trial court ordered the parties to reengage in discovery and submit a new discovery plan, *see* RA, tab 114 at 1-9 (Dec. & Order re: Mot. Compel), and that after Judge Sukola's retirement, there were times when no active scheduling order or discovery plan was in effect. But it does not follow that Plaintiffs could not move the case forward by engaging in discovery until a judge was appointed. Unlike the plaintiffs in *United Pac. Islanders' Corp.* and *McCreadie*, the Plaintiffs here were not waiting on the trial court to resolve dispositive motions. Instead, Plaintiffs seem to make the

dubious claim they could not conduct discovery at all—including answering interrogatories or taking depositions—until a judge was appointed.

[36]     As the GRCP are generally derived from the Federal Rules of Civil Procedure, and because discovery issues are infrequently decided by appellate courts, we look to decisions of federal district courts regarding discovery as instructive. *See Gov't of Guam v. O'Keefe ex rel. Heirs of Torres Estate*, 2018 Guam 4 ¶ 9. "A pillar of [civil] litigation is that discovery should proceed with minimal involvement of the Court." *Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 513 (D. Nev. 2020). "Instead of forcing judicial oversight of every dispute, attorneys are expected to approach discovery with an eye toward cooperation, practicality, and sensibility." *Id.* The governing rules reflect this in several ways: under GRCP 26(d), "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" except "when authorized under these rules or by order or *agreement of the parties*." Guam R. Civ. P. 26(d) (emphasis added). Rule 26(d) states that "methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, does not operate to delay any other party's discovery." *Id.*

[37]     Plaintiffs' arguments belie a mistaken belief that there is a moratorium on conducting discovery unless there is a discovery plan in effect that has been given judicial imprimatur. But as Wright & Miller explain: "The normal rule under Rule 26(d) is that once the moratorium on discovery has ended" after the first Rule 26(f) conference and creation of the first discovery plan, "all parties are allowed to use the discovery devices when and how they choose." 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2047 (3d ed. (June 2024 Update)). Because the parties had held their first Rule 26(f) conference and submitted a discovery plan to the court in 2018, Plaintiffs were free to use the discovery devices when and how they chose over

the ensuing four years.[8]  That the deadlines in the 2018 and 2020 plans eventually lapsed before discovery was completed or the case could be set for trial did not act as a bar on the Plaintiffs' ability to move the case along by conducting discovery "with an eye toward cooperation" with opposing counsel.  *See Big City Dynasty*, 336 F.R.D. at 513.  The existence of specific discovery disputes that required judicial oversight did not block the Plaintiffs from pursuing all other avenues of discovery.

[38]     Furthermore, the 2020 discovery plan did not require judicial approval before discovery could begin because it was approved by all parties before it was filed.  RA, tab 59 at 1-3 (CVR 16.1 Form 2, Jan. 15, 2021); *see, e.g.*, *Kaffko v. Quepasa Corp.*, No. 2:11-cv-01253-JCM-LRL, 2011 WL 4442654, at *2 (D. Nev. Sept. 22, 2011) ("Although it is apparent . . . that the parties were under the impression that they were required to file a motion in order to conduct discovery outside the Rule 26 time limits, . . . this could be accomplished by agreement between the parties without the court's approval.").  Any argument that Plaintiffs' delay in conducting discovery under this plan was excused because they were waiting for judicial approval lacks merit.  *See Mendoza v. Amalgamated Transit Union Int'l*, No. 2:18-cv-00959-JCM-CWH, 2019 WL 9100188, at *4 (D. Nev. June 24, 2019) (rejecting plaintiff's argument that "discovery deadlines were unclear because the court had not yet adopted the parties proposed discovery plan," because "the parties proceeded with discovery as if the proposed discovery plan was the operative scheduling order"), *report and recommendation adopted*, No. 2:18-CV-959 JCM DJA, 2020 WL 2112121 (D. Nev. May 4, 2020), *aff'd*, No. 20-16079, 2022 WL 1045603 (9th Cir. Apr. 7, 2022).  There is nothing to suggest the

---

[8] The Superior Court's conclusion that the parties had yet to meet and confer about their discovery disputes was not a determination that they had yet to hold a Rule 26(f) conference.  *See* RA, tab 114 at 7 (Dec. & Order re Mot. Compel).  Although sometimes referred to as a "meet and confer," the Rule 26(f) conference serves a different purpose and is governed by different standards than the meet and confer required by Rule 37(a) before filing a motion to compel.

parties could not have again extended discovery by stipulation or that Plaintiffs could not have unilaterally moved to extend the time for discovery under GRCP 6(b)(1)(B). *See* Guam R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . on motion made after the time has expired if the failure to act was the result of excusable neglect.").[9] As established, Plaintiffs' discovery efforts were minimal—they never took Tebo's deposition or responded to Tebo's discovery requests. *See* Appellee's Br. at 4. Although the parties may have gone an extended period without a judge assigned to their case, this did not excuse the Plaintiffs from acting to move the case along by conducting discovery. We are ultimately unpersuaded by the Plaintiffs' excuses and find the Superior Court did not abuse its discretion when it concluded that they do not excuse the delay as reasonable. We defer to the Superior Court's assessment of these considerations; these factors weigh in favor of dismissal.

### 2. The risk of prejudice to defendants

[39] "The Plaintiff bears the burden of showing that the delay is reasonable and that the defendant is not prejudiced by the delay." *Santos*, 1997 Guam 4 ¶ 5. "If the plaintiff offers a reasonable excuse for the inaction, the burden then shifts to the defendant who must demonstrate prejudice." *McCreadie*, 2014 Guam 19 ¶ 18 (quoting *Affordable Home Builders*, 2013 Guam 12 ¶ 34). However, "once a delay is determined to be unreasonable, prejudice . . . is presumed." *Id.* (alteration in original) (quoting *Affordable Home Builders*, 2013 Guam 12 ¶ 34). "Unreasonable delay produces a presumption of prejudice because of the inherent risk of fading memories and the ephemeral nature of evidence." *Id.* If left unrebutted, the presumption of prejudice is sufficient to support dismissal. *Kawashima*, 2010 Guam 10 ¶ 21 ("[P]resumed prejudice is sufficient to

---

[9] Plaintiffs did not move to extend discovery time until nearly two years after the expiration of the discovery deadline set in the discovery plan, and only then did so after Defendants had already moved to dismiss for failure to prosecute. See RA, tab 59 at 2 (CVR 16.1 Form 2, Jan. 15, 2021) (setting deadline of September 28, 2020); RA, tab 108 at 1 (Mot. Enlarge Time Conduct Disc., Sept. 7, 2022).

support a Rule 41(b) dismissal."); *Affordable Home Builders*, 2013 Guam 12 ¶ 35 ("[T]his presumption of prejudice, left untreated without rebuttal, is sufficient to warrant dismissal under GRCP Rule 41(b).").

[40]     The Superior Court concluded that prejudice to Tebo was presumed because it had determined the delay was unreasonable. RA, tab 120 at 5 (Dec. & Order re: Second Mot. Dismiss). Tebo was not required to show that he suffered actual prejudice. *See Kawashima*, 2010 Guam 10 ¶ 21. Because the Superior Court found the delay to be unreasonable, it was correct to conclude that the risk of prejudice weighed in favor of Tebo, as Plaintiffs effectively left "the presumption of prejudice without sufficient rebuttal." *See Affordable Home Builders*, 2013 Guam 12 ¶ 41. Because the Superior Court did not abuse its discretion in determining there was an unreasonable delay, we also find it did not abuse its discretion in concluding that presumed prejudice was sufficient to favor dismissal.

### 3. The public policy favoring the disposition of cases on their merits

[41]     The public policy favoring the disposition of cases on their merits generally weighs against dismissal. *See Santos*, 1997 Guam 4 ¶ 9. "The question is whether the policy of determining cases on their merits justifies the delay and prejudice caused by [the party's] conduct." *O'Keefe*, 2018 Guam 4 ¶ 36 (alteration in original) (quoting *Somerfleck*, 2017 Guam 8 ¶ 18). The public policy factor "can be outweighed by the first two factors alone." *Affordable Home Builders*, 2013 Guam 12 ¶ 45; *see also Quitugua*, 2004 Guam 19 ¶ 20. As this court has held, "[t]he public policy of determining cases on their merits should not be used defensively as a shield by a passive Plaintiff who has failed in his obligation to prosecute the defendants with the vigor expected of a Plaintiff." *Santos*, 1997 Guam 4 ¶ 9.

[42]     The trial court acknowledged that "[w]hile public policy always favors a resolution of cases on their merits, and this factor generally weighs in favor of the plaintiff, the factor must be weighed against the first two factors."  RA, tab 120 at 5 (Dec. & Order re: Second Mot. Dismiss) (citing *Estate of Concepcion v. Siguenza*, 2003 Guam 12 ¶ 23).  The Superior Court concluded that public policy was insufficient to justify "the delay and prejudice caused by Plaintiffs' actions."  *Id.*  As discussed above, the Superior Court found the first two *Santos* factors to weigh strongly against Plaintiffs and in favor of dismissal.  The court concluded that these first two factors outweighed the public policy favoring disposition on the merits.  The trial court found that Plaintiffs had a pattern of failing to respond to discovery, properly meet and confer, and attend status conferences. Ultimately, it was not an abuse of discretion for the Superior Court to conclude that although public policy favors the disposition of cases on the merits, it did not justify the delay and prejudice caused by the Plaintiffs' conduct and was outweighed by the other factors.

### 4.  The availability of less drastic sanctions

[43]     For the final factor, "[t]he trial court is not required to impose lesser sanctions."  *Santos*, 1997 Guam 4 ¶ 10.  All that is required is "[t]he reasonable exploration of possible and meaningful alternatives."  *Kawashima*, 2010 Guam 10 ¶ 24 (quoting *Anderson v. Air West, Inc.*, 542 F.2d 522, 525 (9th Cir. 1976)).  Alternatives can include prior warnings by the Superior Court.  *See Affordable Home Builders*, 2013 Guam 12 ¶ 48 (holding lesser sanctions need not be imposed "when the court first issues a warning to the disobedient party, which, when ignored, evinces noncompliance").

[44]     Plaintiffs argue that the Superior Court did not explore other alternatives when it dismissed the case. Appellants' Br. at 22.  However, the Superior Court determined that the availability of less drastic sanctions weighed in favor of dismissal precisely because lesser alternatives had

already been imposed, as Plaintiffs failed to heed Judge Sukola's prior warning. RA, tab 120 at 5-6 (Dec. & Order re: Second Mot. Dismiss). Judge Sukola specifically cautioned that "no further delays on the part of the Plaintiff[s] will be tolerated, and Plaintiff is warned that any further dilatory behavior will result in a dismissal." RA, tab 67 at 6 (Dec. & Order re: Mot. Dismiss). Because the Superior Court found that Plaintiffs ignored Judge Sukola's warning, it was not required to consider additional, lesser sanctions. *See Quitugua*, 2004 Guam 19 ¶ 22 (determining that trial court correctly concluded this factor weighed in favor of dismissal when court had denied earlier motion to dismiss, and plaintiff failed to heed court's "specific and express warning" to move case towards resolution).

[45]    This factor is not difficult to meet, as the trial court need only consider less drastic sanctions, which were already taken in this case. It was not an abuse of discretion for the Superior Court to follow through on Judge Sukola's warning and dismiss the case. The trial court thoroughly examined each *Santos* factor to determine whether a sanction of dismissal for failure to prosecute was appropriate, and it found only the fourth factor—the public interest in disposition on the merits—did not counsel in favor of dismissal. Although dismissal may be a harsh sanction, we cannot say the Superior Court "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *See Quitugua*, 2004 Guam 19 ¶ 23 (quoting *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 652 (9th Cir. 1991)).

## V.  CONCLUSION

[46]    There is substantial evidence in the record to support the trial court's finding that Plaintiffs' inaction amounted to a failure to prosecute. The Superior Court made specific findings on each of the *Santos* factors, concluding that four of the five factors weighed in favor of dismissal. Because the Superior Court applied the correct legal standard to its factual findings, it did not abuse its

discretion in dismissing Plaintiffs' case as a sanction for their failure to prosecute. We **AFFIRM**

the Superior Court's decision and order granting the Defendants' second motion to dismiss.


| /s/ | /s/ |
|:---:|:---:|
| F. PHILIP CARBULLIDO | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |


/s/
ROBERT J. TORRES
Chief Justice